IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

## STATE OF TENNESSEE v. JASON INGRAM STOKES

**Direct Appeal from the Circuit Court for Giles County**
**No. 7949, Jim T. Hamilton, Trial Judge**

---

**No. M1999-1892-CCA-R3-CA - Decided May 12, 2000**

---

The appellant was convicted of theft of property over $500 and the misdemeanor offenses of driving an unregistered vehicle and possessing a vehicle without a serial number. In this direct appeal, the appellant contends that the proof was insufficient to sustain his convictions for these three offenses. After review of the record before this court, we affirm the judgments of conviction.

**Tenn. R. App. P. 3(b) Appeal as of Right; Judgment of the Circuit Court affirmed.**

HAYES, J. delivered the opinion of the court, in which RILEY, J. and ACREE, SP. J., joined.

Gregory D. Smith, Clarksville, Tennessee, attorney for appellant, Jason Ingram Stokes.

Paul G. Summers, Attorney General and Reporter, Michael Moore, Solicitor General, Marvin E. Clements, Jr., Assistant Attorney General, T. Michael Bottoms, District Attorney General, for the appellee, State of Tennessee.

## <u>OPINION</u>

The Giles County Grand Jury returned a four count indictment charging the appellant, Jason Ingram Stokes, with one count of knowingly possessing a vehicle without a manufacturer's serial number, one count of theft of property over $1,000, one count of felony escape, and one count of operating an unregistered vehicle. The trial court, following the close of all proof, entered a judgment of acquittal as to the charge of felony escape. As to the remaining counts, the jury found the appellant guilty of possession of a vehicle without a serial number, theft of property over $500, and violation of the registration law. An effective sentence of two years confinement was imposed by the trial court. The appellant now appeals from these convictions alleging that the proof is insufficient to support his convictions.

After review, we affirm.

## Background

Thomas Jerry Moore, a resident of Lawrence County, was the owner of an orange 1976 Triumph Spitfire convertible with silver rims. In July, 1996, under an agreement with the owner of Cars Plus, Moore placed the automobile on the business' used car lot for sale at the price of $900. On July 17, Moore noticed that his vehicle was missing from the lot. After further inquiry, he learned that the vehicle had not been sold. At this point, law enforcement authorities were notified that the vehicle had been stolen. A "BOLO" was dispatched regarding the stolen vehicle.

Giles County Sheriff's Deputy Karla Sands overheard the dispatch. Thirty minutes later, while Deputy Sands was on patrol, she observed a white Triumph Spitfire without a license plate. She attempted to stop the white vehicle by activating the patrol car's blue lights. The vehicle failed to stop and continued, turning onto another road. The white Spitfire finally stopped in a pasture. Deputy Sands approached the vehicle and requested identification from both the driver and the passenger. The driver was identified as the appellant; the passenger was his brother, Mack Stokes, who was also later charged with theft of the vehicle.

When asked why the vehicle did not have a tag, Mack Stokes responded, "We just bought the car." Deputy Sands then asked to see the bill of sale. Mack Stokes handed Sands a piece of paper. Deputy Sands noticed that the paper writing was undated, referred to a 1974 MG, and that the handwriting was the same for both buyer and seller. The seller was listed as David Johnston. Deputy Sands also noticed that the vehicle identification number [VIN] plate appeared to have been removed from the dashboard. A VIN plate was neither located on the inside of the door nor on the engine. "[The appellant and his brother] were making comments that they had just recently had [the vehicle] painted, and I made a comment on what a fine job that they had done. But when I opened the door to look at the VIN plate, I seen orange." Presuming the vehicle to be stolen, she then radioed for a tow truck. She informed both the appellant and his brother that they were being transported to the county jail because they were in possession of a vehicle without VIN plates.

At the jail, the appellant and Mack Stokes denied that the vehicle had been stolen. They explained that "they bought it from a guy in Alabama." She instructed the two to sit on a bench while she talked to the investigator. While she was gone, the appellant and Mack Stokes "ran out the door." A short time later, they were located in a nearby vacant office. After the appellant and his brother were returned to custody, they were informed of their Miranda rights. Both men waived their rights and provided statements to Chief Criminal Investigator Michael Chapman and Investigator Tim Dickey. In his statement, the appellant stated:

> On Monday, me and my brother, Mack Stokes, were in Athens, Alabama at the Chevron store. Mack seen a guy driving a white car with a 'for sale' sign in the front window. I was pumping gas and buying cigarettes. Mack walked over and started ta[l]king to him. He was a[n] Iranian . . . . The man's name was David Johnston. Mack and David Johnston drove the car to Rogersville, Alabama, to the bank. Mack cashed a check for a roofing job, and paid $250.00 cash to Johnston. I don't know who wrote out the bill of sale. Mack and David did that, after they got to the bank.

Mack Stokes gave the following statement:

> I think that on Monday, me and my brother was at a salvage yard in Salem, Alabama, when I seen a little foreign white car. . . .
> I started talking to this little Mexican or Hispanic guy who was driving the car. He said that he wanted to sell the car for about $500.00, and I talked him down to $250.00 cash.
> So I paid him cash for the car, and he pulled out the bill of sale. My brother, Jason, watched me fill out the bill of sale and David Johnston signed it.
>
> After I bought the car, I drove it to my house and started working on it. . . .

At trial, the appellant testifying in his own defense attempted to reconcile the material discrepancies between his and his brother's statements. Indeed, he maintained that on the date they first acquired the Triumph Spitfire, the Chevron station was "right next-door to the little junkyard." He described Mr. Johnston as being dark complected, "Hispanic or Asian, maybe." He further asserted that Mack, and not he, purchased the vehicle and, "by Alabama laws, he legally bought it. . . . All you need is a little bill of sale on a notebook paper." The appellant, contrary to Deputy Sands' testimony, asserted that the vehicle was white when it had been purchased. He further maintained that his brother purchased the vehicle and he was merely driving it. At trial, Moore identified the white Triumph Spitfire recovered from the appellant as being his car which was stolen from the Cars Plus car lot.

**Analysis**

In his sole issue on appeal, the appellant contends that the evidence presented at trial was legally insufficient to support his convictions for theft of property, driving a vehicle without a VIN number, and driving an unregistered vehicle. Specifically, he argues that all of these offenses are "intent" crimes; and, because the State did not dispute his claim that the vehicle belonged to his brother, the State could not prove the appellant's intent to act illegally.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 317, 99 S.Ct. 2781, 2789 (1979). We do not reweigh or reevaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

A defendant challenging the sufficiency of the evidence has the burden of illustrating to this court why the evidence is insufficient to support the verdict returned by the trier of fact. This court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the

record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Moreover, circumstantial evidence alone may be sufficient to support a conviction. See State v. Leming, 3 S.W.3d 7, 13 (Tenn. Crim. App. 1998) (citing State v. Smith, 868 S.W.2d 561, 569 (Tenn. 1993)). If a conviction is based purely on circumstantial evidence, the facts and circumstances must be so overwhelming as to exclude any other explanation except for the defendant's guilt. State v. Tharpe, 726 S.W.2d 896, 900 (Tenn.1987). When reviewing the sufficiency of circumstantial evidence, this court must remember that the jury decides the weight to be given to circumstantial evidence, the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence. Leming, 3 S.W.2d at 13.

The State presented proof at trial which established that, on July 17, 1996, an orange Triumph Spitfire convertible was discovered stolen from Cars Plus in Lawrence County. Soon after law enforcement officers were advised of the theft, Deputy Sands recovered in Giles County a white Triumph Spitfire convertible without registration and without a manufacturer's serial number in the possession of the appellant and his brother. The white Spitfire was identified by the owner as the orange Spitfire stolen from the Cars Plus car lot. The appellant and his brother asserted ownership of the vehicle by means of a "piece of paper," which purported to be a bill of sale. The alleged "bill of sale" was handwritten and was for a 1974 MG and not a 1976 Triumph Spitfire. It was obvious that the vehicle had recently been painted white, and was originally a deep orange color. Moreover, the ignition had been "torn out," wires had been cut, and the car could not be started with a key. The appellant and his brother provided conflicting statements as to their initial possession of the vehicle and the appellant's in-court testimony conflicted with prior statements made to law enforcement. We would acknowledge that the appellant's credibility with the jury was perhaps severely strained based upon his identification at trial of the person who sold the car as an Iranian from Limestone County, Alabama, with the Anglo name of David Thompson who spoke with a Spanish accent.[1]

When a defendant has possession of recently stolen goods and cannot provide an adequate explanation as to how he obtained the goods, an inference can be made that the defendant stole the property. Bush v. State, 541 S.W.2d 391, 394 (Tenn.1976). Clearly, from the combination of the proof introduced at trial, the glaring inconsistencies in the statements of the appellant and his brother, and the appellant's possession of the stolen vehicle, a rational juror could find, beyond a reasonable doubt, the appellant guilty of possession of a vehicle without a VIN number, theft over $500, and violation of the registration law. See T.R.A.P. 13(e); see also Tenn. Code Ann. § 55-5-111(1993) ( class C misdemeanor to knowingly buy, receive, dispose of, sell, offer for sale, or have . . . any motor vehicle . . . from which the manufacturer's serial . . . number . . . has been removed, defaced,

---

[1]At one point the appellant equivocated and described the seller of the car as possibly Asian. He conceded that his exposure in Alabama to Iranians was limited. However, he explained to the jury that his identification of the seller as an "Iranian" was from television, "I've seen Sadam in the news. Everybody has." When advised that Sadam was from Iraq, he replied, "same thing."

covered, altered or destroyed); Tenn. Code Ann. § 55-4-101(1993) (unlawful to operate vehicle not properly registered); Tenn. Code Ann. § 39-14-103 (1990)(person commits theft if, with intent to deprive owner of property, person knowingly obtains or exercises control over the property without owner's consent).  Accordingly, we conclude that the proof is sufficient to support the appellant's convictions.

The judgments of conviction entered by the trial court are affirmed.